IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:23-CT-3283-M-RJ

| | | |
|---|---|---|
| ANTONIO MARICE DICKENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| OFFICER STUART and JOHN DOE OFFICERS, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, a state inmate proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983.
This action is before the court on plaintiff's motion for discovery [D.E. 18] and defendant Officer
Stuart's ("Stuart") motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and
12(b)(6) [D.E. 24]. Plaintiff responded in opposition. For the reasons discussed below, the court
denies plaintiff's and defendant Stuart's motions.

STATEMENT OF THE CASE

On October 2, 2023, plaintiff filed the instant action alleging defendants violated his civil
rights pursuant to 42 U.S.C. § 1983. (Compl. [D.E. 1]). Plaintiff alleges defendants conspired to
murder him and failed to protect him from an attack by a fellow inmate. (Id. at 5–7; Mot. Am.
[D.E. 9] at 2–3). After conducting its initial review, the court allowed the action to proceed on
January 17, 2024, on plaintiff's individual capacity failure to protect claims against defendants
Stuart and John Doe Officers. On March 18, 2024, plaintiff filed the instant motion for discovery
of all plaintiff's names, current addresses, and insurance company. On May 3, 2024, defendant

Stuart filed the instant motion to dismiss supported by a memorandum. On May 16, 2024, plaintiff filed a response in opposition.

## STATEMENT OF FACTS

The facts, as alleged in plaintiff's complaint and motion to amend, may be summarized as follows. While housed in Wake County Detention Center, plaintiff witnessed a fellow inmate, Ahmad Nasser ("Nasser"), and defendant Stuart appeared to develop a relationship. (Compl. [D.E. 1] at 5–6). Plaintiff tried to advise Nasser against continuing the relationship and antagonizing other inmates, but thereafter, Nasser and plaintiff began having troublesome interactions. (Id.). Plaintiff told Nasser to stay away from him. (Id. at 6). In August 2023, some razor blades went missing, and plaintiff was aware Nasser was the one that took them. (Id.). Staff searched, but no razor blades were found. (Id.).

On August 23, 2023, defendant Stuart came into the cell block with the officers with which she always worked and opened Nasser's cell door. (Id.). Nasser then gave Stuart a "sign." (Id.). Plaintiff started playing cards with other inmates before going back to his cell with a tablet to make a phone call. (Id. at 6–7). Nasser came to plaintiff's open cell door, and plaintiff told him to stay away. (Id. at 7). Three officers were posted at the cell door leaning on the windows watching plaintiff and Nasser. (Id.). Plaintiff asked defendant Stuart, "Really?" (Id.). Stuart just gave plaintiff a look as if to say "So what?" (Id.).

Plaintiff again asked Nasser to leave his cell door. (Id.). Nasser then ran into plaintiff's cell and attacked plaintiff swinging a razor blade. (Id.). Nasser grabbed plaintiff by his dreadlocks to hold his head still and attempted to slit plaintiff's throat. (Mot. Am. [D.E. 9] at 3). Plaintiff tried to keep Nasser from cutting him and hurt his wrist. (Compl. [D.E. 1] at 7). Nasser pulled

2

out five of plaintiff's dreadlocks during the altercation. (Mot. Am. [D.E. 9] at 3). Defendants stood at plaintiff cell door watching the struggle. (Id.). When Nasser was unsuccessful in cutting plaintiff's throat, defendants then broke up the fight. (Id.). Stuart pulled Nasser away and made sure the razor was not found. (Compl. [D.E. 1] at 7; Mot. Am. [D.E. 9] at 3). The other officers then shut plaintiff in his cell. (Compl. [D.E. 1] at 7). As a result of the attack, plaintiff now suffers from sleepless nights. (Pl. Resp. [D.E. 29] at 1).

COURT'S DISCUSSION

A.    Motion for Discovery [D.E. 18]

The court has not entered a case management order setting a period for discovery in this case, and thus plaintiff's early request for discovery is premature. See Lone Star Steakhouse & Saloon, Inc. v. Alpha v. Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (explaining district court is afforded "substantial discretion in managing discovery"). In the event this case proceeds to discovery, plaintiff must serve his discovery requests on defendants. See Fed. R. Civ. P. 34(a).

B.    Motion to Dismiss [D.E. 24]

1.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the complaint's legal and factual sufficiency. See Iqbal, 556 U.S. at 677–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63 (2007); see also Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) ("[A motion to dismiss] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To withstand a motion to dismiss under Rule 12(b)(6), a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

3

on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

"[I]n evaluating a Rule12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); see also Iqbal, 556 U.S. at 679–80. However, the court will not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" or "unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd., 591 F.3d at 255 (quotation marks and citations omitted). "Nor must [a court] accept as true allegations that contradict matters properly subject to judicial notice." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation marks omitted). Although the court liberally construes pro se filings, Erickson v. Pardus, 551 U.S. 89, 94 (2007), all complaints must contain "more than labels and conclusions," Twombly, 550 U.S. at 555.

    2.    Analysis

As stated above, plaintiff alleges defendants failed to protect him from an attack from fellow inmate Nasser. (Compl. [D.E. 1] at 5–7). Plaintiff's claim arises under the Fourteenth Amendment to the United States Constitution, where he was a pretrial detainee at the time of the alleged constitutional violation. See Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988). The Fourteenth Amendment analysis of plaintiff's claim, however, is coextensive with the Eighth Amendment standard applicable to convicted prisoners. See Mays v. Sprinkle, 992 F.3d 295, 300–02 (4th Cir. 2021).

4

To make out a prima facie case that prison conditions violate the Eighth Amendment, "a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quotation omitted). "[T]he first showing requires the court to determine whether the deprivation of the basic human need was objectively sufficiently serious." Id. (emphasis and quotation omitted). The second showing "requires [the court] to determine whether subjectively the officials acted with a sufficiently culpable state of mind." Id. (emphasis, alteration, and quotation omitted). To satisfy the second, subjective showing, a plaintiff must prove the official acted with deliberate indifference. Id.; see Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.").

Prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (citation and quotation marks omitted). An Eighth Amendment failure-to-protect claim "requires proof of two elements to establish deprivation of a constitutional right." Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014). The prisoner first "must establish a serious deprivation of his rights in the form of a 'serious or significant physical or emotional injury.'" Id. (citation omitted); see also De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (noting only "extreme deprivations" – i.e., a "serious or significant physical or emotional injury resulting from the challenged conditions" or a substantial risk thereof – satisfy the objective prong of Eighth Amendment conditions-of-confinement claims). Second, the

5

prisoner must show that the prison official had a "sufficiently culpable state of mind," i.e., a "deliberate indifference to inmate health or safety." Danser, 772 F.3d at 346–47.

A prison official, however, will not be liable for a failure to protect an inmate "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Failure to alleviate a significant risk of harm that an official "should have perceived but did not" also does not violate a plaintiff's constitutional rights. Id. at 838.

Plaintiff alleges that moving defendants were deliberately indifferent to the risk posed by Nasser. The first element of the test is satisfied, as plaintiff alleges Nasser hurt his wrist and tore out five dreadlocks, and plaintiff suffers from sleepless nights because of the attack. Danser, 772 F.3d at 346; De'Lonta, 330 F.3d at 634; (Compl. [D.E. 1] at 7; Mot. Am. [D.E. 9] at 3; Pl. Resp. [D.E. 29] at 1). Further, plaintiff has alleged a substantial risk of harm where he claims Nasser tried to slit his throat with a razor. See Helling v. McKinney, 509 U.S. 25, 33–35 (1993); De'Lonta, 330 F.3d at 634; Mot. Am [D.E. 9] at 2–3).

The second element requires allegations that moving defendants knew of and disregarded a substantial risk of harm. Farmer, 511 U.S. at 837; Danser v, 772 F.3d at 347. This element is met where plaintiff alleges defendants stood at his cell door watching the attack and only intervened after Nasser was unsuccessful in slitting plaintiff's throat. (See Mot. Am. [D.E. 9] at 3). When officers watched Nasser try to slit plaintiff's throat, they would have been aware that a substantial risk of serious harm existed. See Farmer, 511 U.S. at 837; Danser, 772 F.3d at 346–47. Accordingly, plaintiff has stated a claim that defendants failed to protect him from Nasser.

6

Defendants assert they are entitled to qualified immunity as to plaintiff's failure to protect claims. Qualified immunity protects government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Iko v. Shreve, 535 F.3d 225, 237 (4th Cir. 2008). The qualified immunity analysis proceeds in two steps, which the court "may address in whichever sequence will best facilitate the fair and efficient disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444 (4th Cir. 2022). First, the plaintiff must show a violation of a constitutional right. Id.; Stanton v. Elliot, 25 F.4th 227, 233 (4th Cir. 2022). Second, defendants bear the burden of showing the right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 231 (2009); Stanton, 25 F.4th at 233. "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (alterations and quotations omitted).

Defendants argue that plaintiff has failed to allege a violation of his constitutional rights, and if there were a constitutional violation, the right at issue was not clearly established at the time of violation. The court finds plaintiff stated a claim for a constitutional violation for the reasons explained above. Further, reasonable officers in defendants' position would have recognized that their alleged actions – watching Nasser attempt to slit plaintiff's throat and intervening only after Nasser was unsuccessful – violated plaintiff's clearly established rights. See id. at 743; Farmer, 511 U.S. at 833. Thus, the court defers ruling on qualified immunity pending further factual development and legal argument from the parties.

Defendant also requests that the John Doe defendants be dismissed pursuant to Federal Rule of Civil Procedure 4(m). Where the court denies defendant Stuart's motion to dismiss and the court's January 17, 2024, order allowed plaintiff to identify John Doe defendants by the close of discovery, the request is denied.

Finally, to the extent plaintiff seeks to state a claim for civil conspiracy pursuant to 42 U.S.C. § 1985, plaintiff's allegations are insufficient. Such a claim requires plaintiff to plausibly allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy that resulted in [the] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Plaintiff's bare assertion that defendants were in conspiracy fails to demonstrate a "meeting of the minds" that is required, and therefore, plaintiff fails to state a claim. See, e.g., Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995). Further, to the extent plaintiff seeks to bring criminal charges for conspiracy for murder against, plaintiff lacks any such right. See, e.g., Kunzer v. Magill, 667 F. Supp. 2d 1058, 1061 (D. Minn. 2009) (citing Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)). Therefore, plaintiff's conspiracy claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

For the reasons discussed above, plaintiff's motion for discovery and defendant Stuart's motion to dismiss [D.E. 18, 24] are DENIED. Plaintiff's conspiracy claims are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The court REFERS the action to United States Magistrate Judge Robert B. Jones, Jr., for entry of a scheduling order. Plaintiff is WARNED that

8

the defendant John Doe Officers will be dismissed from this action without prejudice if plaintiff

fails to identify them by the close of discovery.

SO ORDERED, this the 17th day of ___March___, 2025.

_Richard E Myers II_
RICHARD E. MYERS, II
Chief United States District Judge